UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL CHAO,<br>      Plaintiff, | )<br>)<br>)<br>) |
| v. | )   Civil No. 3:19-cv-10194-MGM |
| | )<br>) |
| JAKE HALKO, et al.,<br>      Defendants. | )<br>) |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR LEAVE TO AMEND THE COMPLAINT TO ADD PARTIES
(Dkt No. 78)

ROBERTSON, U.S.M.J.

This matter is before the court on the motion by plaintiff Daniel Chao ("Plaintiff") to amend his complaint (Dkt. No. 78), which is opposed on futility grounds by defendants Jon Paul Paige ("Paige"), Christopher Braley ("Braley"), Brian Baptista ("Baptista"), Anthony Sbrocca ("Sbrocca"), Anthony Brennan, Richard Jaworski, Charles R. Hooper, Lois Russo, and Sean Medeiros, along with prospective defendants Thomas A. Turco III ("Turco") and Richard Bodurtha ("Bodurtha") (collectively, "Defendants") (Dkt. No. 80).[1]  For the reasons set forth below, Plaintiff's motion is DENIED without prejudice.

**I.     BACKGROUND**

Plaintiff filed his complaint on January 29, 2019 (Dkt. No. 1) and filed a first amended complaint on May 16, 2019 (Dkt. No. 29).  On January 20, 2021, the most recent deadline for

---

[1] Defendants Jake Halko ("Halko") and Ann Frascarelli did not oppose Plaintiff's motion.

filing motions to amend, Plaintiff filed the instant motion seeking leave to file a second amended complaint (Dkt. Nos. 76, 78).

In Plaintiff's proposed Second Amended Complaint, he alleges that, on February 12, 2016, when Plaintiff was an inmate at Massachusetts Correctional Institution at Concord, Halko lured Plaintiff into an area of the prison out of view of security cameras and assaulted him (Dkt. 78-1 at ¶¶ 26, 30-34). Defendants Paige, Braley, and Baptista arrived on the scene in response to an emergency response call and joined in the beating (Dkt. 78-1 at ¶¶ 36-38). Plaintiff suffered serious injuries from the attack, including a severed left ear that required plastic surgery and over thirty stitches to re-attach, a fractured rib, a sprained ankle, and numerous bruises and cuts throughout his body (Dkt. 78-1 at ¶¶ 42-52).

On the day of the incident, Halko and Sbrocca submitted false incident reports regarding the use of force against Plaintiff (Dkt. No. 78-1 at ¶¶ 89, 91, 106). Halko falsely claimed that Plaintiff spit and lunged at him, that he punched Plaintiff once on the ear with a closed fist, and that Plaintiff fell to the ground and was secured by other officers (Dkt. 78-1 at ¶¶ 91-92). Sbrocca falsely claimed that he observed Plaintiff actively resisting the other responding officers; video surveillance footage reveals that Sbrocca's location would have made it impossible for him to have seen Plaintiff during the incident (Dkt. No. 78-1 at ¶¶ 106-107).

Several days later, Plaintiff submitted a formal grievance to DOC officials and an internal affairs investigation was initiated (Dkt. No. 78-1 at ¶¶ 93-94). This resulted in Halko, as well as Paige, Braley, and Baptista, submitting false addendum reports, which differed significantly from their original reports (Dkt. No. 78-1 at ¶ 95). For example, Halko claimed for the first time in his addendum report that he fell to the floor with Plaintiff, that Plaintiff assaulted him on the ground, and that Plaintiff was flailing his arms and kicking his legs (Dkt. No. 78-1 at ¶ 97).

Paige, who had originally reported only that Plaintiff was resisting being placed in handcuffs, now reported that he observed Halko on the ground in a struggle with Plaintiff, that Plaintiff was flailing his arms and kicking his legs, and that Plaintiff caused him to fall and injure his wrist (Dkt. No. 78-1 at ¶¶ 100-101).  Braley, similar to Paige, originally reported that Plaintiff was resisting being placed in handcuffs but did not describe any other assaultive behavior (Dkt. No. 78-1 at ¶ 98).  In his addendum report, Braley claimed that Plaintiff struck and kicked him and other officers and that he sustained injuries as a result (Dkt. No. 78-1 at ¶ 99).  Finally, Baptista had originally reported that when he responded to the scene, Plaintiff was already in handcuffs (Dkt. No. 78-1 at ¶ 102).  Yet in his addendum report, Baptista reported that when he responded, he observed Plaintiff on the ground flailing his arms and kicking, and actively resisting attempts to secure him (Dkt. No. 78-1 at ¶ 103).  According to Plaintiff, Halko and Sbrocca included the false information in their original reports, and Halko, Paige, Braley, and Baptista included the false information in their addendum reports, to justify their use of excessive force against Plaintiff and to account for his significant injuries (Dkt. No. 78-1 at ¶¶ 104, 107).

The internal affairs investigation concluded in the late summer of 2016, with the results comprising nearly 300 pages of documentation and analysis (Dkt. No. 78-1 at ¶¶ 148, 158). Among other things, the investigation concluded that Halko had used excessive force on Plaintiff and that he had made false statements in his addendum report and his internal affairs interview, that Paige, Braley, Baptista, and Sbrocca had all made false statements in their reports and interviews as well, and that that Halko, Paige, Braley, and Baptista had collaborated with each other to falsely depict Plaintiff's actions as combative in order to justify the use of force and injuries sustained (Dkt. No. 78-1 at ¶¶ 149-150, 152-154).

The Commissioner of the DOC at the time, Turco, held hearings in relation to the internal affairs investigation's finding that Halko, Braley, Paige, Baptista, and Sbrocca had violated DOC policy (Dkt. No. 78-1 at ¶ 156). Bodurtha was the Commissioner's hearings officer and reported his findings back to Turco (Dkt. No. 78-1 at ¶ 157). Bodurtha refused to sustain the finding of the use of excessive force and the findings that the corrections officers had colluded to cover up the use of excessive force, and he deemed the officers' statements during the internal affairs interviews truthful (Dkt. No. 78-1 at ¶¶ 161-164). Turco adopted all of Bodurtha's findings (Dkt. No. 78-1 at ¶ 165). Turco and Bodurtha place the blame for Plaintiff's extensive injuries solely on Halko (or on Plaintiff himself) (Dkt. No. 78-1 at ¶ 166). According to Plaintiff, Bodurtha and Turco acted to limit the DOC officers' liability and exposure to Plaintiff and any indemnification by placing the blame completely on Halko and refusing to represent him or indemnify him for any damages (Dkt. No. 78-1 at ¶ 167).

Based on these allegations, Plaintiff seeks to add claims for violation of his due process right of access to the courts and for civil conspiracy against Turco, Bodurtha, Halko, Paige, Braley, Baptista, and Sbrocca (Dkt. No. 78-1 at ¶¶ 215-234).

II.  **DISCUSSION**

  A.  Standard of Review

After the defendant has filed a responsive pleading, a plaintiff must have the permission of the court or consent of the opposing party to amend a complaint. *Stier v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). "The default rule mandates that leave to amend is to be 'freely given when justice so requires,'" *id*. (quoting Fed. R. Civ. P. 15(a)), "unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" *Id*. (quoting *Resolution Tr. Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994)). "If leave to amend is sought

before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level ... and state a facially plausible legal claim," *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true all well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor." *Id.* (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

   B.  <u>Futility</u>

In his proposed second amended complaint, Plaintiff asserts a claim for violation of his due process right of access to the courts against Turco, Bodurtha, Halko, Paige, Braley, Baptista, and Sbrocca. Plaintiff alleges that existing defendants Halko, Paige, Braley, Baptista, and Sbrocca lied about the assault on Plaintiff and conspired to cover up what happened and that Turco and Bodurtha purposely disregarded the finding of the internal affairs investigation in order to limit the liability of Paige, Braley, Baptista, and Sbrocca and exposure to any indemnification by placing all of the blame on Halko and declining to represent or indemnify him.

Defendants mount four arguments in an attempt to resist amendment of the complaint. First, Defendants posit, without citation to authority, that the results of the internal affairs investigation and the subsequent hearing are inadmissible as hearsay and could not contribute to

5

any alleged cover-up.  The court finds that the question of the admissibility or lack thereof of the investigation and hearing are not ripe for decision, nor is the question an open-and-shut one as Defendants would have it.  *See, e.g., Alston v. Town of Brookline*, No. 20-1434, 2021 WL 1827131, at *14-15 (1st Cir. May 7, 2021) (noting that Fed. Rule Civ. P. 803(8) "crafts an exception to the hearsay rule, in certain circumstances and subject to certain conditions, for 'factual findings from a legally authorized investigation' by a governmental entity," but not reaching the issue of the admissibility of a decision and findings of the Massachusetts Civil Service Commission because it was not properly before the district court).

Second, Defendants quibble with certain of Plaintiff's factual representations.  However, disputes regarding the facts are not appropriate for resolution on a motion to amend the complaint.  *See, e.g., J.S. McCarthy, Co., Inc. v. Brausse Diecutting & Converting Equip., Inc.*, 226 F.R.D. 14, 17 (D. Me. 2005) ("[The defendant's] urgent and well expressed disagreements with [the plaintiff's] allegations may prove out, but at this stage, the Court cannot resolve factual disputes.").

Third, Defendants suggest that, at least with respect to Turco and Bodurtha, the allegations are conclusory.  While this is a close question, in this court's view, the allegations are sufficient, if barely, to survive a motion to dismiss.  Plaintiff has alleged that Turco and Bodurtha ignored the findings of the internal affairs investigation and instead participated in a cover-up for the express purpose of limiting the liability of Paige, Braley, Baptista, and Sbrocca and any indemnification by placing all the blame on Halko and declining to represent or indemnify him.

While the allegations against Turco and Bodurtha may not survive summary judgment, they are sufficient to state a claim.[2]

Finally, Defendants suggest that Plaintiff fails to cite controlling First Circuit precedent in *Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir. 1980). However, *Landrigan* is distinguishable, as recognized by the court in *Gonsalves v. City of New Bedford*, 939 F. Supp. 921 (D. Mass. 1996). In *Landrigan*, the plaintiff alleged a civil rights conspiracy among the defendant police officers to cover up the excessive use of force by one of them. *Id*., 628 F.2d at 739. In assessing the viability of the claim, the court noted that, for a conspiracy to be actionable under § 1983, there must have been both an agreement and an actual deprivation of a right secured by the Constitution and laws. *Id*. at 742. Because the plaintiff had already brought a successful state court action for the excessive use of force, he suffered no actual deprivation or damage. *Id*. In contrast, Plaintiff alleges in this case, as did the plaintiff in *Gonsalves*, that he may suffer an actual deprivation in that the cover-up may impede his ability to prove a violation of his constitutional rights by multiple defendants. For liability to attach, the jury would be "required to find that any false report was intended to keep the [P]laintiff from discovering and proving a violation of [his] rights and that it succeeded in that effort." *Gonsalves*, 939 F. Supp. at 927. "[T]hese added elements of intent and actual consequences [would] distinguish[ ] this case from the situation which the Court of Appeals for the First Circuit was addressing in *Landrigan*." *Id*.

---

[2] There may be other reasons why Turco or Bodurtha may be shielded from liability. For example, it may be that Bodurtha has absolute immunity arising from the performance of a quasi-judicial role. *See Bettencourt v. Bd. of Registration in Med. of Commonwealth of Mass.*, 904 F.2d 772, 782 (1st Cir. 1990) (holding that quasi-judicial immunity applies to "certain 'quasi-judicial' agency officials who, irrespective of their *title*, perform *functions* essentially similar to those of judges or prosecutors in a setting similar to those of a court."). However, this argument was not raised by Defendants.

While none of Defendants' arguments are availing, the court nevertheless concludes that Plaintiff's proposed amendment is futile on another ground.  In the case of *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002), the Supreme Court divided denial of the right of access to the courts cases into two categories: "forward looking" and "backward looking."  A "forward looking" access claim involves the assertion that "official action is presently denying an opportunity to litigate for a class of potential plaintiffs."  *Id*. at 413.  The object of this type of suit "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed."  *Id*.  "Backward looking" access claims, on the other hand, involve "specific cases that cannot now be tried (or tried with all material evidence) no matter what official action may be in the future."  *Id*. at 413-14.  These types of claims allege that official acts have "caused the loss or inadequate settlement of a meritorious case," "or the loss of an opportunity to seek some particular order of relief."  *Id*. at 414.  The aim of these types of claims is "simply the judgment in the access claim itself," that is, the remedy that otherwise was lost because of the official act.  The Court noted that there was a history of cases of the backward-looking variety at the appellate level but emphasized that it was "assum[ing], without deciding, the correctness'" of those decisions.  *Id*. at 414, n.9.  In other words, "[t]he Supreme Court was careful not to endorse the validity of these backwards looking claims."  *Jennings v. City of Stillwater*, 383 F.3d 1199, 1209 (10th Cir. 2004).  It is this latter type of claim that Plaintiff attempts to advance here.

One of the circuit court cases cited by the *Christopher* Court is *Williams v. City of Boston*, 784 F.2d 430 (1st Cir. 1986).  In *Williams*, the First Circuit stated, albeit in dicta, that "[a]n official cover-up may violate section 1983 if it deprives the plaintiff of his right of access to the courts."  *Id*. at 435 (citing *Bell v. City of Milwaukee*, 746 F.2d 1205, 1264 (7th Cir. 1984)).

However, the court refused to consider the claim when it was raised for the first time on appeal. *Id*. Nor has the First Circuit had occasion to address a backward-looking access-to-court claim asserting a police cover-up theory since it decided *Williams*. That said, it appears from *Williams* that the First Circuit would recognize such a claim. The question then is whether Plaintiff has plausibly alleged one.

To state a backward-looking denial of access-to-court claim, a plaintiff must identify: (1) a nonfrivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available. *Christopher*, 536 U.S. at 415; *see also Harer v. Casey*, 962 F.3d 299, 308 (7th Cir. 2020); *Waller v. Hanlon*, 922 F.3d 590, 602 (5th Cir. 2019); *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007); *Broudy v. Mather*, 460 F.3d 106, 120 (D.C. Cir. 2006). Plaintiff has plausibly alleged the first two elements. Plaintiff has stated underlying § 1983 claims, as well as state law claims under the Massachusetts Civil Rights Act and common law. Plaintiff has further alleged that Halko, Paige, Braley, Baptista, and Sbrocca engaged in a cover-up by conspiring to draft and submit false reports and to lie in their internal affairs interviews in an effort to cover up the use of excessive force. According to Plaintiff, Turco and Bodurtha furthered the cover-up by disregarding the findings of the exceedingly thorough internal affairs investigation and instead condoned and adopted the false cover-up story concocted by Paige, Braley, Baptista, and Sbrocca. However, Plaintiff's claim falters on the third element. Plaintiff has not "specified what remedy the alleged police cover-up has put out of reach." *Harer*, 962 F.3d at 308. Plaintiff says that the alleged cover-up impedes his ability to prove his case and the damages to which he would otherwise be entitled and the available sources to satisfy any such damage claims. This may be true, but at this point, it is no more than

9

speculation, and for this reason his claim is not yet ripe. *See id*. at 305-06, 310-11 (ordering dismissal without prejudice of the plaintiffs' backward-looking access-to-court claim based on an alleged police cover-up because it was premature where the underlying wrongful death lawsuit was still pending with remedies available; "With the ultimate resolution of [plaintiffs'] wrongful death case in doubt, [their] access-to-court claim is not ripe for judicial review."); *Waller*, 922 F.3d at 602 (same with respect to a still-pending excessive force claim; "Unless and until the plaintiffs' claim against Hoeppner suffers some concrete setback traceable to the defendants' alleged coverup, their allegation that the defendants impaired their effort to bring that claim is no more than speculation about an event that may or may not come to pass."); *Pollard v. Pollard*, 325 F. App'x 270, 272 (4th Cir. 2009) (affirming the district court's order dismissing the plaintiff's § 1983 denial of access to the courts claim based on a police cover-up where the plaintiff's timely-filed wrongful death action was pending in state court and she did not present any evidence that defendants' action rendered ineffective any state court remedy she previously may have had); *Swekel v. City of River Rouge*, 119 F.3d 1259, 1264 (6th Cir. 1997) (affirming the district court's grant of summary judgment noting that "[a] plaintiff cannot merely guess that a state court remedy will be ineffective because of a defendant's action, [but] [r]ather, the plaintiff must present evidence that the defendants' actions actually rendered any available state court remedy ineffective"). Any other result "would contradict the Supreme Court's direction that a remedy available 'in some suit that may yet be brought' or for 'a presently existing claim' defeats this element of a plaintiff's access-to-court claim." *Harer*, 962 F.3d at 309 (quoting *Christopher*, 536 U.S. at 415-16).

To support the addition of a denial of access-to-courts claim, Plaintiff relies on *Gonsalves*. In *Gonsalves*, the plaintiff, the administratrix of the estate of a deceased arrestee,

10

brought civil rights and wrongful death claims against a number of police officers. *Id*., 939 F. Supp. at 923.  At trial, the jury found that the arrestee had been beaten to death in the police station and denied medical attention, but an intentional cover-up by all the defendants caused the jury to be unable to decide who was responsible for the constitutional violations.  *Id*.  The court found that the plaintiff had a viable § 1983 claim because, "[i]n such circumstances, the plaintiff has been deprived of property without due process by being deprived of the right to be awarded damages in a meritorious lawsuit as a result of the defendants' unconstitutional conduct."  *Id*. at 926 (footnote omitted).  In *Gonsalves*, the plaintiff pled the underlying civil rights claims, along with the claim for the intentional cover-up in the same complaint, and they were tried in the same proceeding.  The verdict sheets required the jury first to determine if excessive force had been used, then to determine if the plaintiff had proven that any of the defendants had been responsible for the use of excessive force, and, only if the jury was unable to determine that any particular defendant had been responsible, to determine whether that inability was as a result of an intentional cover-up and by whom.  *Id*. at 931.  In that way, the *Gonsalves* court ensured that the plaintiff only recovered for the cover-up claim if she was unable to recover on the underlying claims.

    *Gonsalves*, however, was tried before the Court issued its decision in *Christopher*.  The Court is, perhaps, not explicit in *Christopher* that a backward-looking access claim and the underlying claim that was allegedly lost can never be pled and tried in a single action, as was done in *Gonsalves*, but that is the obvious tenor of the opinion.  Indeed, the Court stated that:

> because these backward-looking cases are brought to get relief unobtainable in other suits, the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can

  award no remedy that the plaintiff could not have been awarded on a presently existing claim."

*Christopher*, 536 U.S. at 416.  Allowing the plaintiff to plead the denial of access claim before he actually suffers harm from the alleged cover-up is at odds with the direction given by the Court in *Christopher*, as demonstrated by the circuit court decisions in *Herer*, *Waller*, and *Pollard*.  Thus, Plaintiff cannot rely on *Gonsalves* as authority for adding denial of access claims to the operative complaint.

### III.  CONCLUSION

  For the above-stated reasons, Plaintiff's motion for leave to amend the complaint is DENIED without prejudice.

  It is so ordered.

                 /s/ Katherine A. Robertson
                 KATHERINE A. ROBERTSON
                 United States Magistrate Judge

DATED: May 26, 2021