UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL CHAO,  )
    Plaintiff,  )
      )
    v.  )  Case No. 3:19-cv-10194-MGM
      )
JAKE HALKO, et al.,  )
    Defendants.  )

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO COMPEL
DEPOSITION TESTIMONY OF DEFENDANT JAKE HALKO
(Dkt. No. 111)

I.    Introduction

Plaintiff Daniel Chao ("Plaintiff") brings this civil rights action against various prison guards and supervisory personnel employed by the Massachusetts Department of Corrections as a result of a severe beating he alleges he received at the hands of correctional staff at MCI Concord on February 12, 2016 (Dkt. No. 111 at 2). At defendant Jake Halko's ("Halko") deposition, Halko invoked the Fifth Amendment and refused to answer relevant questions posed to him. Now before the court is Plaintiff's motion to compel Halko to answer at least some of the questions he refused to answer.[1] The court held a hearing on Plaintiff's motion on June 29, 2021. For the reasons set forth below, Plaintiff's motion to compel is DENIED.

II.    Relevant Background

Plaintiff alleges that, on February 12, 2016, while he was an inmate at Massachusetts Correctional Institution at Concord, Halko lured Plaintiff into an area of the prison out of view of security cameras and assaulted him (Dkt. No. 29 at ¶¶ 24, 29-32). Defendants Paige, Braley, and

---

[1] In the alternative, Plaintiff's motion sought a stay in discovery until, by Plaintiff's calculation, the statute of limitations will run on potential criminal charges against Halko. The court denied this aspect of Plaintiff's motion at the June 29, 2021, hearing.

1

Baptista arrived on the scene in response to an emergency response call and, rather than intervening to prevent further injuries to Plaintiff, joined in the beating (Dkt. No. 29 at ¶¶ 34-35, 40, 58-60, 63-64, 67-68).  Plaintiff suffered serious injuries from the attack, including a severed left ear that required plastic surgery and over thirty stitches to re-attach, a fractured rib, a sprained ankle, and numerous bruises and cuts all over his body (Dkt. No. 29 at ¶¶ 41-50).

On the day of the altercation, Halko submitted a false incident report regarding the use of force against Plaintiff (Dkt. No. 29 at ¶ 71).  Halko claimed that Plaintiff spit and lunged at him, that he punched Plaintiff once on the ear with a closed fist, and that Plaintiff fell to the ground and was secured by other officers (Dkt. 29 at ¶¶ 89-90).

Several days later, Plaintiff submitted a formal grievance to DOC officials and an internal affairs investigation was initiated (Dkt. No. 29 at ¶¶ 91-92).  This resulted in Halko, as well as Paige, Braley, and Baptista, submitting false addendum reports, which differed significantly from their original reports (Dkt. No. 29 at ¶ 93).  A constant theme in this case is that Plaintiff is being stonewalled and is unable to discover information about the acts of each of the individual officers and what role, if any, each played in causing his serious injuries.

Plaintiff's motion to compel is based on the limited factual disclosures Halko has made about the incident and his subsequent invocation of his Fifth Amendment rights.  Halko's limited disclosures and the questions he refused to answer are set out in detail and with admirable clarity in Plaintiff's memorandum (Dkt. No. 111 at 4-10).  In summary, in a report prepared after the incident, Halko stated that he struck Plaintiff in the head with his fist.  In his answers to requests for admissions, he admitted striking Plaintiff in the head and causing injury to Plaintiff.  He further admitted that either defendant Christopher Braley or Jon Paul Paige, or both, pushed him off of Plaintiff and that correctional officers other than himself struck Plaintiff.  In a response to

interrogatories, he stated that the incident report he signed was drafted by defendant Tony Brennan (Dkt. No. 111 at 4-6).  At Halko's deposition, he invoked his Fifth Amendment rights and declined to answer questions about his physical interactions with Plaintiff beyond his admissions that he struck Plaintiff in the head and injured him and, also on the basis of the Fifth Amendment, he declined to answer questions about the actions of other correctional officers during and after the altercation and Brennan's role in drafting his report (Dkt. No. 111 at 6-10).

III.     Analysis

"The Fifth Amendment has long been interpreted to mean that a defendant may refuse to 'answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Fisher v. Kew*, CIVIL ACTION NO. 18-11678-DJC, 2019 WL 3554379, at *2 (D. Mass. Aug. 5, 2019) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).  "[T]he burden to demonstrate … a[n authentic] danger [of prosecution] is 'not a particularly onerous' one." *Id.* (quoting *United States v. Castro*, 129 F.3d 226, 229 (1st Cir. 1997)).  "To properly invoke the privilege, 'the prospective witness need only limn some reasonable possibility that, by testifying, he may open himself to prosecution.'" *Id. (*quoting *Castro*, 129 F.3d at 229).  "[T]he First Circuit focuses on the possibility, rather than the probability, of prosecution." *United States v. LaMotte*, Case No. 15-mc-93017-MGM, 2016 WL 2731623, at *5 (D. Mass. Apr. 19, 2016) (citing *United States v. Johnson*, 488 F.2d 1206, 1209 n.2 (1st Cir. 1973)).

Although Plaintiff may be skeptical that Halko faces a real risk of criminal prosecution, he does not quarrel with the basic propositions set out above.  Instead he argues, first, that, by Halko's answers to requests for admissions, in which he admitted hitting Plaintiff in the head and injuring him, Halko has provided some information that "'would furnish a link in the chain of

evidence needed to prosecute [Halko] for a … crime,'" *Cox v. Marini*, Civil Action No. 05-11608-GAO, 2007 WL 2363623, at *1 (D. Mass. Aug. 17, 2007) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)), and cannot now invoke the privilege "'to "avoid disclosure of the details."'" *Id.* (quoting *United States v. Gary*, 74 F.3d 304, 312 (1st Cir. 1996)); *see also Rogers v. United States*, 340 U.S. 367, 373 (1951) ("Disclosure of a fact waives the privilege as to details."). Second, Plaintiff argues that Fifth Amendment rights are personal so that Halko is not entitled to invoke the Fifth Amendment to avoid incriminating others, and that, having represented that other officers struck Plaintiff and that Brennan prepared Halko's incident report, Halko cannot rely on the Fifth Amendment to protect Brennan and other correctional officers. *See Rogers*, 340 U.S. at 371. The court addresses these contentions in turn

1. Whether Halko is required to provide additional details related to his altercation with Plaintiff.

Plaintiff represents – and Halko does not deny – that in Halko's responses to requests for admissions, he admitted that he "struck Plaintiff in the head," and that he "caused injury to Plaintiff" (Dkt. No. 111 at 4). At his deposition, Halko invoked his Fifth Amendment rights rather than disclosing which hand he used to hit Plaintiff and whether Plaintiff fell down after Halko hit him (Dkt. No. 111 at 6-7). After testifying that Plaintiff spat at him and made a lunging movement toward him, Halko invoked the Fifth Amendment and did not answer any further questions about his role in the correctional officers' February 12, 2016, physical altercation with Plaintiff (Dkt. No. 111 at 6). Plaintiff contends that, because Halko admitted the facts that he struck Plaintiff in the head and caused Plaintiff injury, and because these facts are potentially incriminating, he cannot withhold further details that flesh out these admissions.

Plaintiff is correct that a party to civil litigation is not entitled to reveal a fact and then rely on the Fifth Amendment to refuse to reveal details about that fact. A party is not entitled to

4

"conceal materials unfavorable to [his] position under the Fifth Amendment while selectively releasing droplets of materials that support [his] position." *Cisco Sys., Inc. v. Sheikh*, Case No. 4:18-cv-07602-YGR, 2020 WL 5877573, at *4 (N.D. Cal. Oct. 2, 2020). In *Rogers*, however, the Supreme Court described the proper follow-up inquiry as whether the answer to a further question seeking those details "present[s] a reasonable danger of *further* crimination in light of all of the circumstances, including any previous disclosures." *Rogers*, 340 U.S. at 374 (emphasis added). "[O]nce a person has revealed an incriminating fact, requiring him to make other disclosure on the same matter, without further incrimination, does not conflict with the interests protected by the Fifth Amendment." *In re Bon Voyage Travel Agency, Inc.*, 449 F. Supp. 250, 253 (N.D. Ill. 1978). "If a disclosure by a witness is not of an incriminating nature, he cannot be compelled to answer additional or other related questions which would in fact incriminate him." *Id.* "Furthermore, '[a]n ordinary witness may "pick the point beyond which he will not go" and refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, so long as the answers sought may tend to further incriminate him.'" *Id.* (alteration in original) (quoting *In re Master Key Litig.*, 507 F.2d 292, 294 (9th Cir. 1974)). *See Arndstein v. McCarthy*, 254 U.S. 71, 72 (1920) ("The [assets/liabilities] schedules, standing alone, did not amount to an admission of guilt or furnish clear proof of crime, and the mere filing of them did not constitute a waiver of the right to stop short whenever the bankrupt could fairly claim that to answer might tend to incriminate him."). *Cox v. Marini*, on which Plaintiff relies, is not to the contrary. In that case, defendant Ryan Marini invoked his Fifth Amendment rights to avoid disclosing the identity of his John Doe co-defendant. Where Marini had already admitted that he and John Doe fought with the plaintiff, the court held that Marini could not invoke the Fifth Amendment to avoid identifying Doe because "[w]hether the other participant is called

'John Doe,' or 'A.K.,' or any other name is not itself *inculpatory in any further degree … .*" *Cox*, 2007 WL 2363623, at *2 (emphasis added).

Halko's admissions that he struck Plaintiff in the head and caused Plaintiff injury are not, standing alone, incriminating.  As a correctional officer, Halko could use reasonable force "'in a good-faith effort to maintain or restore discipline … .'"  *Cutts v. Dennehy*, Civil Action No. 07-10587-GAO, 2010 WL 1325465, at *8 (D. Mass. Mar. 31, 2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  For his part, Plaintiff's account of what he remembers about the beating (he lost consciousness) and the extent of the injuries he sustained is powerful evidence that correctional officers' use of force on February 12, 2016, was not reasonable.  While Halko's acknowledgment that he struck Plaintiff once in the head and injured him is not per se incriminating, each additional detail about Halko's physical interactions with Plaintiff risks taking Halko's conduct outside of the realm of a good faith use of reasonable force aimed at maintaining or restoring discipline.  Indeed, Halko represents that the Middlesex County District Attorney's Office initiated proceedings before the Middlesex County Grand Jury to investigate Halko's actions and possibly the actions of others (Dkt. No. 114 at 3).  Halko has "limn[ed] some reasonable possibility that, by testifying, he may open himself to prosecution," *Castro*, 129 F.3d at 229, if he testifies further about his physical interactions with Plaintiff.  For this reason, he is entitled to invoke the Fifth Amendment in response to follow-up questions about his admitted blow to Plaintiff's head and the injury or injuries he admittedly caused to Plaintiff.

2. Whether Halko is required to answer questions about other officers' participation in the physical altercation with Plaintiff or Brennan's role in writing Plaintiff's incident report.

Plaintiff argues that even if Halko is not required to testify about his own actions because of a risk of criminal prosecution, he cannot on this basis avoid testifying about the actions of

other correctional officers. *See Rogers*, 340 U.S. at 371 (the privilege against self-incrimination is purely personal; "a refusal to answer cannot be justified by a desire to protect others from punishment"). Halko, however, could reasonably be concerned that his testimony about the actions of other officers involved in the physical altercation with Plaintiff or Brennan's alleged role in preparing the incident report that Halko signed could be links in a chain of evidence opening Halko to the possibility of prosecution on, for example, charges of conspiracy or obstruction of justice. Plaintiff has alleged that Halko submitted a false incident report regarding the use of force against Plaintiff on the day of the incident (Dkt. No. 29 at ¶ 71), and, more generally, that the defendants conspired together to draft false reports to justify the force used on Plaintiff (Dkt. No. 111 at 3). There was an internal inquiry within the Department of Corrections about the altercation that caused Plaintiff's injuries and whether correctional officers falsified reports, and a grand jury investigation that took testimony from at least four correctional officers (Dkt. No. 114 at 3; Dkt. No. 114 at 3,5). Halko's concerns, alluded to inferentially at the June 29, 2021, hearing on this motion, about possible conspiracy and obstruction of justice charges, are not so fanciful as to justify denying him the protection of the Fifth Amendment. *See, e.g., United States v. Avilies*, 749 F. App'x 263, 266-68 (5th Cir. 2018) (stating that compelling a co-defendant's testimony at trial in the face of his invocation of the Fifth Amendment might have exposed the co-defendant to charges of conspiracy and obstruction of justice). Halko's rights should not be sacrificed because he may also have information pertinent to Plaintiff's claims against other defendants. Because, in the context of this case, testimony from Halko about the activities of other correctional officers could possibly expose Halko himself to criminal charges, he was properly asserting his personal Fifth Amendment rights when he refused to answer

questions about the acts of other correctional officers. For the foregoing reasons, this aspect of Plaintiff's motion will also be denied.

The court acknowledges that "invocation of the Fifth Amendment poses substantial problems for an adverse party [here, Plaintiff] who is deprived of a source of information that might conceivably be determinative in a search for the truth." *SE. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994). Courts have fashioned remedies to address this prejudice and Halko's invocation of his Fifth Amendment rights in this civil action is not likely to be without consequences, at least for Halko. At the trial judge's discretion, for example, jurors may be permitted, although not required, to draw an adverse inference from his invocation of his Fifth Amendment rights. *See, e.g., United States v. Stein*, 233 F.3d 6, 15 (1st Cir. 2000) ("[T]he Supreme Court has adhered to the prevailing rule that the Fifth Amendment does not forbid allowing adverse inferences to be drawn against parties to civil actions from their refusal to testify in response to probative evidence offered against them.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 317 (1976)). Further, the First Circuit has ruled that "[a] defendant may not use the fifth amendment to shield [him]self from the opposition's inquiries during discovery only to impale [his] accusers with surprise testimony at trial." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 577 (1st Cir. 1989). Having invoked his Fifth Amendment rights in discovery, Halko likely will be barred from offering testimony at trial that he declined to provide at his deposition.

IV.     Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel Deposition Testimony of Defendant Jake Halko (Dkt. No. 111) is DENIED.

It is so ordered.

Dated: August 30, 2021                             Katherine A. Robertson
                                                   KATHERINE A. ROBERTSON

U.S. MAGISTRATE JUDGE